**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 13-4371**

─────────

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

     v.

JOSEPHINE ARTILLAGA ADAMS,

          Defendant - Appellant.

─────────

Appeal from the United States District Court for the Northern
District of West Virginia, at Martinsburg.  John Preston Bailey,
Chief District Judge.  (3:11-cr-00054-JPB-JES-2)

─────────

Argued:  March 20, 2014          Decided:  April 29, 2014

─────────

Before GREGORY and KEENAN, Circuit Judges, and DAVIS, Senior
Circuit Judge.

─────────

Vacated and remanded by unpublished per curiam opinion.

─────────

**ARGUED:** John Anthony Carr, Charleston, West Virginia, for
Appellant.  Robert Hugh McWilliams, Jr., OFFICE OF THE UNITED
STATES ATTORNEY, Wheeling, West Virginia, for Appellee.  **ON
BRIEF:** William J. Ihlenfeld, II, United States Attorney, Michael
D. Stein, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

─────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this appeal, we consider whether the district court abused its discretion in denying a defendant's motion to continue her trial to present exculpatory testimony from her co-defendant husband, who previously had been hospitalized and deemed incompetent to stand trial. Upon our review, we vacate the district court's judgment.

I.

Dr. Barton Joseph Adams, the husband of appellant Josephine Artillaga Adams (Mrs. Adams), owned and operated a "pain management" medical practice in West Virginia. In 2008, Dr. Adams was indicted on charges of health care fraud for allegedly submitting false claims to Medicare and Medicaid. However, before he could be tried on those charges, the district court determined that Dr. Adams was "suffering from a mental disease or defect rendering him mentally incompetent" to understand the proceedings against him. In June 2011, in accordance with 18 U.S.C. § 4241(d), the court committed Dr. Adams to the Attorney General's custody for hospitalization "for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." (Emphasis in original.)

2

In September 2011, Dr. and Mrs. Adams were charged in a single indictment alleging sixteen counts of obstruction of justice and related charges. These charges arose from Dr. and Mrs. Adams' acts occurring between 2007 and 2009 involving the alleged concealment of financial proceeds from the underlying health care fraud. The district court severed the defendants' trials based on Mrs. Adams' speedy trial rights and the court's earlier determination that Dr. Adams was incompetent to stand trial. On November 1, 2011, the grand jury issued a superseding indictment against both parties that reflected only minor factual changes.

On November 5, 2011, Mrs. Adams filed a petition for writ of habeas corpus ad testificandum seeking the presence of Dr. Adams to offer exculpatory evidence at her trial. Although the government did not oppose the petition, Dr. Adams' counsel filed a motion requesting that the petition be quashed.

At a November 7, 2011 hearing, Dr. Adams' counsel informed the court that Dr. Adams repeatedly had indicated that he wanted to testify at Mrs. Adams' trial. According to Dr. Adams' counsel, Dr. Adams had concluded that "his testimony would exonerate [Mrs. Adams] as it would tend to prove that she had no actual knowledge of the charged transactions." Nonetheless, Dr. Adams' counsel asserted that Dr. Adams "was not capable of

3

rationally consulting with counsel" to determine whether to waive his constitutional right against self-incrimination.

The district court denied Mrs. Adams' petition for writ of habeas corpus ad testificandum by order dated November 8, 2011. In its order, the court stated that "given Dr. Barton Adams' current status as incompetent to stand trial and [his] inability to cooperate with his attorney," a decision permitting Dr. Adams to testify could potentially violate his right to counsel under the Sixth Amendment, as well as his Fifth Amendment right against self-incrimination.

Three days later, on Friday, November 11, 2011, Mrs. Adams filed a motion to continue her trial until Dr. Adams was declared competent.[1] On Monday, November 14, 2011, the first day of Mrs. Adams' trial, the district court denied her continuance motion and concluded that the motion was "filed in bad faith." In explaining its ruling, the district court stated, in part, that Dr. Adams "had been sent away for the four-month period" and that "it is not certain when or whether Doctor Adams would ever be competent to assist in the preparation of his defense." The court also observed that the motion to continue was filed

---

[1] In her motion, Mrs. Adams waived application of the Speedy Trial Act, 18 U.S.C. §§ 3161-3174.

4

"immediately before trial," and that interpreters and jurors already had been designated.

After a three-day trial, the jury returned a guilty verdict on all sixteen counts alleged in the indictment. The district court entered a judgment order, and later denied Mrs. Adams' post-trial motions for a new trial and for dismissal of the indictment.

Two months after Mrs. Adams' trial, on January 24, 2012, the warden at the medical center where Dr. Adams had been committed filed a certificate with the district court in accordance with 18 U.S.C. § 4241(e), indicating that Dr. Adams was "now competent to stand trial." After holding a hearing, the district court found Dr. Adams competent and ultimately accepted his guilty plea to a reduced number of charges. See United States v. Adams, No. 13-4203, 2014 U.S. App. LEXIS 4613, at *1-2 (4th Cir. March 12, 2014) (per curiam, unpublished).

In May 2013, the district court sentenced Mrs. Adams to a period of three years' probation for the obstruction of justice convictions. Mrs. Adams timely filed the present appeal.

## II.

Mrs. Adams argues that the district court abused its discretion in denying her continuance motion, because the court improperly speculated that Dr. Adams remained incompetent on

5

November 14, 2011, the date of Mrs. Adams' trial. In response, the government contends that Mrs. Adams failed to demonstrate two factors necessary to obtain a continuance for production of a witness. The government asserts that, under the holding in United States v. Clinger, 681 F.2d 221, 223 (4th Cir. 1982), Mrs. Adams was required, but failed, to show the content of Dr. Adams' expected testimony and that Dr. Adams could "probably be obtained" to testify at Mrs. Adams' trial. We disagree with the government's position.

We review a district court's denial of a continuance motion for abuse of discretion. United States v. Williams, 445 F.3d 724, 739 (4th Cir. 2006). And, even when a court engages in such an abuse, the defendant also must show that "the error specifically prejudiced her case." Id. (quoting United States v. Hedgepeth, 418 F.3d 411, 419 (4th Cir. 2005)). When a party requests a continuance to secure the attendance of a witness, the moving party must show: (1) the name of the witness; (2) the expected content of the witness's testimony; (3) how such testimony will be relevant to the issues at trial; (4) that the witness "can probably be obtained if the continuance is granted;" and (5) that the moving party acted with due diligence to obtain the witness's attendance at trial. Clinger, 681 F.2d at 223 (citation omitted). After reviewing the record, we easily conclude that Mrs. Adams satisfied the three Clinger

6

factors that are not disputed on appeal, namely, identifying Dr. Adams, demonstrating that his testimony would be relevant, and acting with diligence to secure his presence at trial.

We also conclude that Mrs. Adams sufficiently demonstrated the nature of her husband's expected testimony in light of the circumstances of this case. The parties did not dispute that Dr. Adams was prepared to provide exculpatory testimony addressing Mrs. Adams' lack of knowledge of her husband's alleged fraud, and his alleged concealment of fraud proceeds. Counsel for Mrs. Adams, as well as counsel for Dr. Adams, informed the court that Dr. Adams' expected testimony would exonerate Mrs. Adams and would demonstrate that she had no knowledge of the charged transactions. The district court did not address the adequacy of Mrs. Adams' proffer in ruling on the request for a continuance. Accordingly, we conclude that Mrs. Adams satisfied this Clinger factor.

We therefore turn to address the remaining Clinger factor, namely, whether Mrs. Adams showed that Dr. Adams "probably" could be obtained to testify if the trial were continued. At the outset, we recognize the obstacle posed to Mrs. Adams' ability to satisfy this factor due to her husband's civil commitment. As the government acknowledges, Mrs. Adams could not predict whether Dr. Adams would ever be restored to competence. However, when she filed her motion for a

7

continuance on November 11, 2011, Mrs. Adams knew that the district court had ordered in June 2011 that Dr. Adams' commitment extend for a reasonable period not to exceed four months. After that time, the court would determine whether Dr. Adams' competency had been restored or was likely to be restored.

Although the record does not indicate when Dr. Adams actually was hospitalized, an updated report on his condition was required by the court's June 2011 order. Further, the facility's warden and medical personnel deemed Dr. Adams competent in January 2012, only two months after Mrs. Adams' conviction.

Rather than continuing Mrs. Adams' trial to obtain an updated status of Dr. Adams' mental condition, the district court denied the continuance based on the court's five-month-old finding regarding Dr. Adams' competency. While the court properly observed that Mrs. Adams' motion to continue was filed on the eve of trial, we nonetheless conclude that under the circumstances of this case, it was incumbent on the district court to continue the trial until the court could make an informed finding regarding the present state of Dr. Adams' condition. See id. at 224 (when a court cannot make a necessary finding with exactness, the court should grant a continuance to receive evidence on that subject).

8

We further conclude that the district court's failure to continue the trial prejudiced Mrs. Adams. See Williams, 445 F.3d at 739 (citation omitted). The evidence and arguments presented by the government at trial focused on Mrs. Adams' involvement in, and knowledge of, the financial transactions at issue, as well as her knowledge of Dr. Adams' underlying health care fraud. Therefore, Dr. Adams' expected testimony would have been highly probative regarding his wife's role in the charged offenses. Accordingly, we conclude that under the facts and circumstances presented, the district court abused its discretion in denying Mrs. Adams' motion for a continuance.[2]

III.

For these reasons, we vacate Mrs. Adams' conviction, and remand the case for a new trial.

VACATED AND REMANDED

---

[2] Because we vacate Mrs. Adams' conviction, we do not address the additional arguments that she raises on appeal.